```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
```

```
HAGEN CONSTRUCTION, INC.,           No. 1:17-cv-6969 (NLH/KMW)

            Plaintiff,              OPINION

     v.

THE WHITING-TURNER
CONTRACTING COMPANY,

            Defendant.
```

**APPEARANCES**:

ZACHARY DAVID SANDERS
COHEN SEGLIAS PALLAS GREENHALL & FURMAN PC
30 SOUTH 17TH STREET
19TH FLOOR
PHILADELPHIA, PA 19103
     On behalf of Plaintiff

MICHAEL CHARLES ZISA
CHARLES FRANCIS KENNY, JR.
PECKAR & ABRAMSON, P.C.
2055 L STREET, NW
SUITE 750
WASHINGTON, DC 20036
     On behalf of Defendant

**HILLMAN**, **District Judge**

This is a breach of contract action arising from two subcontracting agreements. Before the Court is Defendant Whiting-Turner Contracting Company's Motion to Transfer Venue. For the reasons that follow, the Court will grant Defendant's Motion and will transfer this case to the United States District Court for the District of Maryland, Baltimore Division.

**I.**

The Court takes the following facts from Plaintiff's August 2, 2017 Complaint. Defendant, a Maryland corporation with its principal place of business in Maryland, entered into a contract with the Nemours Foundation for a construction project (the "Project") located in Deptford, New Jersey.

On July 29, 2015, Plaintiff Hagen Construction, Inc. and Defendant entered into a written subcontract under which Plaintiff agreed to provide drywall materials and rough carpentry work (the "Drywall Subcontract") for the Project. The original value of the Drywall Subcontract was $2.4 million. On January 28, 2016, the parties entered into a second written subcontract under which Plaintiff agreed to furnish certain materials for millwork and casework (the "Millwork Subcontract") for the Project. The original value of the Millwork Subcontract was $130,720. The Subcontracts included detailed schedules for the work to be completed.

Plaintiff alleges it "experience[d] substantial disruptions on the Project and incurred additional and unexpected costs in completing its work." Plaintiff alleges this resulted in it incurring $650,000 in excess costs. Plaintiff argues this "increased the total value of the Subcontracts to $2,952,166.96." Plaintiff's Complaint pleads that Defendant has

only paid $2,844,442.77, leaving an unpaid balance of $107,724.19.

Plaintiff filed suit in the Superior Court of New Jersey, Law Division on August 2, 2017 claiming breach of contract (Count I), violation of the New Jersey Prompt Payment Act (NJPPA), N.J.S.A. 2A:30A-1 to -2, (Count II), and unjust enrichment (Count III). On September 11, 2017, Defendant removed this case to the United States District Court for the District of New Jersey. Defendant filed a September 18, 2017 Motion to Transfer Venue to the United States District Court for the District of Maryland, Baltimore Division.

## II.

This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332. Plaintiff is a citizen of Pennsylvania, which is its state of incorporation and the location of its principal place of business. Defendant is a citizen of Maryland, which is its state of incorporation and the location of its principal place of business. The Complaint further pleads an amount in controversy in excess of $75,000, exclusive of interest and costs.

## III.

The issue before the Court on the pending motion is the validity of a forum selection clause contained in the Subcontracts. Article 9, section (r) of both Subcontracts

3

identically states, in relevant part: "Any action or suit arising hereunder shall be brought in the jurisdiction where Contractor's principal office is located without regard to principles of conflict of laws or forum non conveniens."

This Court applies federal law rather than state law in determining whether this forum selection clause is valid. The Third Circuit has held that federal law applies when determining the validity of a forum selection clause in diversity cases. Jumara v. State Farm Ins. Co., 55 F.3d 873, 877–78 (3d Cir. 1995). Federal law controls in such cases because "[q]uestions of venue and the enforcement of forum selection clauses are essentially procedural, rather than substantive, in nature." Id. at 877 (quoting Jones v. Weibrecht, 901 F.2d 17, 19 (2d Cir. 1991)).[1]

---

[1] Defendant incorrectly asserts in its moving brief that Maryland law controls, citing to the language set forth in the Subcontracts. Federal law applies to this analysis even where a contract contains a choice of law provision. Dentsply Int'l v. Benton, 965 F. Supp. 574, 578 (M.D. Pa. 1997) ("[T]he validity of the forum selection clause is a matter of federal law, not state law. The employment agreement's choice-of-law provision does not control this issue." (citation omitted) (first citing Jumara, 55 F.3d at 879); and then citing Instrumentation Assocs., Inc. v. Madsen Elecs. (Can.) Ltd., 859 F.2d 4, 6 (3d Cir. 1988))); see also Weichert Real Estate Affiliates, Inc. v. CKM16, Inc., No. 17-4824, 2018 WL 652331 (D.N.J. Jan. 31, 2018) (applying federal law despite choice of law provision); Tessler & Weiss/Premesco, Inc. v. Sears Holding Mgmt. Corp., No. 09-1243, 2009 WL 3335570 (D.N.J. Oct. 15, 2009) (same).

In federal court, if both the original and requested venue are proper, the court looks to 28 U.S.C § 1404(a) to determine if a transfer of venue is appropriate. Id. at 878. 28 U.S.C. § 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."

**A. Whether the forum selection clause is valid.**

A forum selection clause is presumed valid and enforceable unless the non-moving party establishes "(1) that it is the result of fraud or overreaching; (2) that enforcement would violate strong public policy of the forum; or (3) that enforcement would in the particular circumstances of the case result in jurisdiction so seriously inconvenient as to be unreasonable." Moneygram Payment Sys., Inc. v. Consorcio Oriental, S.A., 65 F. App'x 844, 846 (3d Cir. 2003) (quoting Coastal Steel Corp. v. Tilghman Wheelabrator, Ltd., 709 F.2d 190, 202 (3d Cir. 1983)).

The Supreme Court has held that "a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases." Atl. Marine Constr. Co. v. U.S. Dist. Court for the W. Dist. of Tex., 134 S. Ct. 568, 581 (2013) (citing Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 33 (1988)

5

(Kennedy, J., concurring)).  The Court stated that "[w]hen the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause.  Only under extraordinary circumstances unrelated to the convenience of the parties should a § 1404(a) motion be denied."  Id.  A valid forum selection clause is presumed to be enforceable because it is in "the interest of the justice system" and it "protects [the] legitimate expectations" of the parties who bargained for the contract.  Id.

Defendant is seeking the enforcement of the forum selection clause requiring any lawsuits arising out of the Subcontracts to be brought in the State of Maryland.  Defendant asserts the forum selection clause is valid and enforceable.  Plaintiff claims the forum selection clause is invalid and unenforceable because it violates the NJPPA and is therefore contrary to strong public policy in New Jersey.  The NJPPA states, in pertinent part:

> If a subcontractor or subsubcontractor has performed in accordance with the provisions of its contract with the prime contractor or subcontractor and the work has been accepted by the owner, the owner's authorized approving agent, or the prime contractor, as applicable, and the parties have not otherwise agreed in writing, the prime contractor shall pay to its subcontractor and the subcontractor shall pay to its subsubcontractor within 10 calendar days of the receipt of each periodic payment, final payment or receipt of retainage monies, the full amount received for the work of the subcontractor or

> subsubcontractor based on the work completed or the services rendered under the applicable contract.

N.J.S.A. 2A:30A-2(b). The NJPPA further provides that "[i]n any civil action brought to collect payments pursuant to this section, the action shall be conducted inside of this State." Plaintiff asserts that because Defendant did not pay Plaintiff in full for its work on a construction project located in New Jersey, the suit must be litigated in New Jersey.

Defendant refutes Plaintiff's argument under the NJPPA and argues the parties' Subcontracts are not subject to the Act. Defendant asserts that "there is nothing in the Prompt Payment Act which expressly overrides an otherwise clear venue selection clause, and Plaintiff cites to no New Jersey precedent which has applied the Prompt Payment Act as Plaintiff asserts." Additionally, Defendant argues that because Plaintiff agreed in writing to a specific payment schedule, the NJPPA does not apply in this case. Defendant cites to Article V of the Subcontracts, which governs payment. It provides, in pertinent part:

> The Contractor shall[] pay to the Subcontractor an amount equal to ninety percent (90%) or such higher percentage as required by applicable law of the value of the work performed by the Subcontractor as determined by the Architect and approved by the Contractor during any calendar month within fifteen (15) days after payment therefor has been received by the Contractor from the Owner.

Defendant argues that because the provisions of the Subcontracts differ from the provisions of the NJPPA, the Act does not apply

7

and is "irrelevant to the enforceability of the Parties' forum selection clause."

In support of the application of the NJPPA, Plaintiff relies on the case Business Store, Inc. v. Mail Boxes Etc., No. 11-3662, 2012 WL 525966 (D.N.J. Feb. 16, 2012), where the court denied the defendant's motion to transfer venue on the grounds that the forum selection clause would violate public policy under the New Jersey Franchise Practices Act (NJFPA). Id. at *9. The NJFPA governs the relationship between franchisors and franchisees and provides protection to the franchisees in an effort to balance the bargaining power between franchisors and franchisees. N.J.S.A. 56:10-2. Plaintiff asserts that because the Court in Business Store found that the forum selection clause violated New Jersey's strong public policy expressed in the NJFPA, the same conclusion should be reached with regard to the NJPPA.

The court in Business Store found that "in cases related to the NJFPA, the forum selection clauses are 'presumptively invalid because they fundamentally conflict with the basic legislative objectives of protecting franchisees from the superior bargaining power of franchisors and providing swift and effective judicial relief against franchisors that violate the Act.'" Business Store, 2012 WL 525966, at *5 (citing Kubis & Persyzky Assocs. Inc. v. Sun Microsystems, Inc., 680 A.2d 618,

626 (N.J. 1996)). The New Jersey Legislature set forth in its legislative findings that it is "necessary in the public interest to define the relationship and responsibilities of franchisors and franchisees in connection with franchise agreements and to protect franchisees from unreasonable termination by franchisors that may result from a disparity of bargaining power between national and regional franchisors and small franchisees." N.J.S.A. 56:10-2.

Other than citing the Act itself, Plaintiff provides no other evidence of a public policy in New Jersey that would override the parties' forum selection clause.[2] While Plaintiff asserts that the public policy interests under the NJPPA are comparable to that of the NJFPA, Plaintiff does not provide any similar statements from the courts or the Legislature. Plaintiff has failed to establish that enforcement of the forum selection clause would violate a strong public policy interest, and thus render the forum selection clause invalid. The Court finds the forum selection clause valid.

Further, the NJPPA provides for payment within ten calendar days only where "the parties have not otherwise agreed in

---

[2] Plaintiff has also not pleaded that the contract resulted from fraud or overreaching, or that "enforcement would in the particular circumstances of the case result in jurisdiction so seriously inconvenient as to be unreasonable." See Moneygram Payment, 65 F. App'x at 846.

writing." This is further evidence to this Court that there is no strong public policy evident in this matter sufficient to prohibit transfer. In passing the NJPPA, the New Jersey Legislature: (1) allowed parties to contract around the provisions of the NJPPA and (2) did not set even a minimum standard for payment in the event parties contracted around the statute. Thus, the NJPPA appears to be a form of gap-filling legislation that contemplates that sophisticated parties in large segments of the economy will enter into enforceable arms-length agreements that contain terms far different than the ones the statute provides in the absence of such agreements. This is vastly different from a statute like the NJFPA that purports to regulate an entire class of business relationships and sets limits on those contractual relationships. The Court finds that, unlike the NJFPA, the NJPPA does not evidence such a strong public policy in New Jersey that the Court should invalidate an otherwise enforceable forum selection clause.[3]

### B. Whether the public interest factors weigh in favor of the preselected forum.

Under a § 1404(a) transfer of venue analysis, courts weigh both the public and private interests if the forum selection clause is invalid. However, where there is a valid forum

---

[3] The Court leaves it to the transferee court to determine whether Plaintiff's claim under the NJPPA can be sustained.

selection clause, a court must alter its § 1404(a) analysis by only considering the public interest factors when determining whether a transfer of venue is appropriate. Atl. Marine, 134 S. Ct. at 581-82. The court "must deem the private-interest factors to weigh entirely in favor of the preselected forum." Id. at 582.[4] This Court finds that the forum selection clause is valid, and therefore the Court will only consider the public interest factors.

The public interest factors include:

(1) the enforceability of the judgment, (2) practical considerations that could make the trial easy, expeditious, or inexpensive, (3) the relative administrative difficulty in the two fora resulting from court congestion, (4) the local interest in deciding local controversies at home, (5) the public policies of the fora, and (6) the familiarity of the trial judge with the applicable state law in diversity cases.

Tektronix, 98 F. Supp. 2d at 564.

---

[4] The private interest factors include:

(1) the plaintiff's forum preference, (2) the defendant's preference, (3) whether the claim arose elsewhere, (4) the convenience of the parties as indicated by their relative physical and financial condition, (5) the convenience of the witnesses — but only to the extent that the witnesses may actually be unavailable for trial in one of the fora, and (6) the location of books and records (similarly limited to the extent that the files could not be produced in the alternative form.

Cadapult Graphic Sys., Inc. v. Tektronix, Inc., 98 F. Supp. 2d 560, 564 (D.N.J. 2000) (citing Jumara, 55 F.3d at 879-80).

The Court finds the first two public interest factors to be neutral and non-determinative.  As to the third factor of court congestion, the Court notes that in 2017, district judges in the District of New Jersey had 1040 pending cases per judge, compared to 503 in Maryland, which weighs in favor of transfer. See U.S. Courts, Federal Court Management Statistics 15 (2017). As to factor four, the Court concludes that both states have a local interest, as the Project was completed in New Jersey, but Defendant is a citizen of Maryland.  As to the fifth factor, neither party has pointed to a public policy that is determinative in either state, although the Court notes New Jersey's "general policy of upholding the validity [of] forum-selection clauses."  Tektronix, 98 F. Supp. 2d at 568.  The sixth factor further weighs in favor of transfer, as the Subcontracts provide that Maryland law will govern.

The Court finds the public interest factors weigh in favor of the pre-selected forum.  Accordingly, the Court will transfer this matter to the District of Maryland.  An appropriate Order will be entered.


Date: __April 24, 2018__         __s/ Noel L. Hillman__
At Camden, New Jersey         NOEL L. HILLMAN, U.S.D.J.